**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: THE MATTER OF FMT INDUSTRIES, LLC, ET AL** | * | **CIVIL ACTION NO. 23-2388 c/w 23-2426** |
| | * | |
| | * | **JUDGE LANCE M. AFRICK** |
| | * | |
| | * | **MAGISTRATE JUDGE KAREN WELLS ROBY** |
| | * | |
| | * | **This pleading applies to all claims** |

**************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY**

**MAY IT PLEASE THE COURT:**

Claimant, Dustin Harris, through undersigned counsel, files this memorandum in support of his Motion In Limine, and respectfully moves the Court to preclude, or limit the testimony at the trial of this matter of Captain Ron Campana, and Dr. Neil Duplantier identified as expert witnesses by Ingram Barge Company, LLC (hereinafter "Ingram"), and FMT Industries, LLC, Florida Marine, LLC, and PBC Management, LLC (hereinafter collectively "Florida Marine").

**I. Introduction:**

This matter arises out of an accident occurring on January 9, 2023 when the M/V Big D, and its tow, and the M/V Carol McManus, and its tow collided on the lower Mississippi River at or near mile marker 312. (Rec. Doc. 10 at pg. 11, ¶ 9). Florida Marine was the owner and/or owner pro hac vice of the M/V Big D at the time of the accident. (Rec. Doc. 10 at pg. 10, ¶ 5). Dustin Harris was a seaman, and a member of the crew of the M/V Big D at the time of the accident employed as a deckhand under the direct control and supervision of Florida Marine. (Rec. Doc. 10 at pg. 10, ¶ 6; pg. 11, ¶ 8). Ingram was the owner, and/or owner pro hac vice of the M/V Carol McManus at the time of the accident. (Rec. Doc. 10 at pg. 16, ¶ 9).

Dustin Harris suffered multiple disabling injuries as a result of the January 9, 2023 accident, and asserts claims for damages against Florida Marine for negligence pursuant to the Jones Act, and unseaworthiness pursuant to general maritime law as well as claims for maintenance and cure, including punitive damages, and attorney fees due to Florida Marine's wrongful and/or egregious failure to pay maintenance and cure.. (Rec. Doc. 10 at pg. 11, ¶ 9 - 11; pg. 12, ¶ 12; pg. 13, ¶ 15; pg. 14, ¶ 17**;** Rec. Doc. 53, pg. 2 – 4, ¶ 6 - 15). Dustin Harris also asserts claims for damages against Ingram for negligence under the general maritime law. (Rec. Doc. 10, pgs. 14-20, ¶ 1 - 19).

**II. Law:**

The Court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997). Rule 702 provides that an expert witness "qualified…by knowledge, skill, experience, training, or education may testify" if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case. *Fed. R. Evid. 702*.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 "requires the district court to act as a gatekeeper to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"

The Court's gatekeeping function consists of a two-part inquiry into reliability, and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F. 3d 269, 276 (5th Cir. 1998).

The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief, or unsupported speculation. *Id* at 590. Fundamentally unsupported opinions offer no expert assistance to the trier of fact, and should be excluded. *Guile v. United States*, 422 F. 3d 221, 227 (5th Cir. 2005). Rule 702 permits an expert to be qualified based on "knowledge, skill, experience, training, or education." *United States v. Hicks*, 389 F. 3d 514, 524 (5th Cir. 2004). However, a district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Huss v. Gayden*, 571 F. 3d 442, 452 (5th Cir. 2009).

Second, the Court must determine whether the experts reasoning or methodology "fits" the facts of the case, and whether it will thereby assist the trier of fact to understand the evidence. *Badeaux v. Eymard Brothers Towing Company, Inc.*, No. 19-13427, 2021 WL 4860300 (E.D. La. Oct. 19, 2021). In other words, it must determine whether it is relevant. *Daubert*, 509 U.S. at 591. Expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F. 2d 448, 450 (5th Cir. 1990).

An expert "opinion" stating that plaintiff's testimony is inconsistent with other parts of the record is both unhelpful to the fact finder, and also risks impermissibly invading the factfinding province of the Court as credibility determinations fall within the jury's province. Fed. R. Evid. 702(a); *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F. 3d 606, 618 (5th Cir. 1999). Statements that involve weighing the veracity and credibility of plaintiff's version of events against the testimony provided by defendant's witnesses, impermissibly infringe on the role of the fact finder. *In re: M&M Wireline & Offshore Servs., LLC*, No. 15-5338, 2016 WL 4681196 (E.D. La. Sept. 7,

2016). Further, expert "opinion" on a legal issue is not permitted. *Bodzin v. City of Dallas*, 768 F. 2d 722, 725 (5th Cir. 1985).

**III. <u>Captain Ron Campana</u>:**

Ingram, and Florida Marine have both identified Captain Ron Campana as an "industry expert to discuss navigation and underway operations of the vessels and impact of the operations and collision."[1] Captain Campana's report also states he was "…asked to opine on whether the collision and movements of Mr. Harris seen on the videos adversely affected Mr. Harris."[2] A review of Captain Campana's curriculum vitae shows that he is a marine surveyor, and marine safety expert.[3]

Captain Campana's report includes segments of Mr. Harris' deposition testimony.[4] His report includes a timeline he prepared after watching the M/V Big D's CCTV videos, Rosepoint, Blue Box data, and navigation data, and the M/V Carol McManus' Rosepoint, Blue Box data, and navigation data.[5] His report includes four (4) screen grabs of the M/V Big D's CCTV video.[6]

Based on the above, Captain Campana concludes that:

a. "Mr. Harris's testimony is not corroborated by the galley video. The video clearly shows Mr. Harris not falling at all and not having any of the motions he testified to in his deposition."[7]

b. "The impact viewed on the CCTV footage only slightly affected one deckhand who momentarily lost his balance…No other crewmember is seen having difficulty."[8]

---

[1] Claimant's Exhibit 1: in globo, Ingram's Expert Witness Disclosure, and 05/01/24 email from Florida Marine.
[2] Claimant's Exhibit 2: Captain Campana's report, pg. 8.
[3] Id, pg. 1 – 5.
[4] Id, pg. 11 – 14.
[5] Id, pg. 8, 15
[6] Id, pg. 15 – 18.
[7] Id, pg. 17
[8] Id, pg. 18

c. "The vessel gradually slowed down from 9.44 mph to 6.30 mph in the one minute before the collision. There was no rapid de-acceleration or sudden motion that would cause anyone to lose their balance. Based on my experience, the motion of the vessel slowing down would not cause someone to lose their balance or stumble. The video footage during this time confirms the motion of the vessel slowing down did not cause any sudden movement that would affect anyone's ability to stand up."[9]

d. Before the collision crewmembers can be seen moving about in the galley reacting to the General Alarm bell and heading up to the wheelhouse, and out onto the deck."[10]

e. "There is no video evidence Mr. Harris encountered any falls himself as he testified to at the time of the incidents."[11]

f. "The movement in the vessel from the initial collision impact was a minor shuttering for a split second. The secondary impact when the light barge hits the port bow is captured on the bow camera as well as galley camera. Again, no one is seen falling down and Mr. Harris is visible on the galley camera footage. The side-to-side motion is captured on video and when this happens, the galley camera shows Mr. Harris standing up."[12]

g. "Based upon my experience, the task of reconnecting the various broken loose barges, heavy safety lines and rigging would be a very strenuous task requiring strength and endurance especially since it was the middle of the night. The videos from the M/V Big D show Mr. Harris performing these tasks."[13]

---

[9] Id, pg. 18
[10] Id, pg. 19
[11] Id, pg. 19
[12] Id, pg. 19
[13] Id, pg. 19

Captain Campana's report primarily offers his "director's commentary" so to speak of the CCTV video Florida Marine produced from the M/V Big D before, during, and after the January 9, 2023 accident. The CCTV video is self-explanatory. It does not require an "expert" to explain what is depicted on the CCTV video. All of Captain Campana's testimony in this regard should be excluded.

Captain Campana is also not an expert in accident reconstruction, or biomechanics, however he offers opinions in those fields. For example, he opines that "there was no rapid de-acceleration or sudden motion <u>that would cause anyone to lose their balance</u>," "the motion of the vessel slowing down <u>would not cause someone to lose their balance or stumble</u>," and "the video footage during this time confirms the motion of the vessel slowing down did not cause any sudden movement <u>that would affect anyone's ability to stand up</u>." (emphasis ours). Whether Dustin Harris lost his balance, whether he stumbled, and whether his ability to stand up was affected is outside of Captain Campana's expertise as a marine safety expert, and should be excluded.

A similar opinion offered by Captain Campana was excluded in *Badeaux v. Eymard Brothers Towing Company, Inc.*, No. 19-13427, 2021 WL 4860300 (E.D. La. Oct. 19, 2021) wherein he offered an opinion as to whether plaintiff slipped on the spar barge, or the kevel based on where he landed. The Court in excluding Captain Campana's opinion stated that whether plaintiff slipped on the spar barge, or the kevel is a contested issue, that Campana's opinion in that regard did not reflect the application of any expertise, and that to the extent such an analysis would benefit from an expert opinion, Campana did not have the requisite expertise as he is a marine safety professional, who is not qualified by knowledge, skill, experience, training, or education to conduct a biomechanical analysis regarding the physics of plaintiff's fall. *Id* at pg. 5.

Additionally, whether Dustin Harris fell, stumbled, and/or lost his balance, and injured himself is an ultimate issue of fact, and law to be decided by the trier of fact. As set forth above, expert “opinion” on a legal issue, or that invades the fact finding province of the trier of fact is not permitted.

Along the same lines, Captain Campana’s opinion that Dustin Harris’ “…testimony is not corroborated by the galley video” should also be excluded. As set forth above, an expert “opinion” stating that plaintiff’s testimony is inconsistent with other parts of the record is both unhelpful to the fact finder, and also risks impermissibly invading the factfinding province of the Court as credibility determinations fall within the trier of fact’s province.

Finally, Captain Campana’s opinion that the work performed after the accident to secure the loose barges is “a very strenuous task requiring strength and endurance” does not reflect the application of any expertise, and is not helpful to the trier of fact. The trier of fact can determine on its own without “expert” testimony whether these activities are strenuous, require strength, and/or require endurance by watching the CCTV video, and by listening to the testimony of claimant, and his fellow crewmembers who engaged in these activities after the accident.

All of Captain Campana’s testimony should therefore be excluded as unreliable, and irrelevant. The CCTV video is self-explanatory. An “expert” is not required to explain what is depicted on the CCTV video. Likewise an “expert” is not required to determine whether the work performed after the accident was strenuous, or required strength or endurance. Captain Campana is also not qualified to testify in the fields of accident reconstruction, or biomechanics therefore his opinion whether anything happened that could have caused Dustin Harris to fall, stumble, lose his balance, or affect his ability to stand should be excluded. Whether Dustin Harris suffered an accident, and injury are ultimate conclusions of fact, and law on which Captain Campana is not

permitted to testify. These are issues for the trier of fact, and Captain Campana's testimony will not aid the trier of fact in determining those factual, and legal issues.

### IV. Dr. Neil Duplantier:

Ingram, and Florida Marine have both identified orthopedic surgeon, Dr. Neil Duplantier, as an expert witness to testify regarding Dustin Harris' "…condition, treatment, and prognosis."[14] Despite being an orthopedic surgeon, and not a neurologist, Dr. Duplantier in his report makes numerous statements, and opinions regarding Dustin Harris' head injury, including whether he suffered a concussion, and traumatic brain injury (TBI) as follows:[15]

a. "Upon further questioning he also suffers with headaches…he developed seizures after the trauma…he has been diagnosed with a traumatic brain injury."[16];

b. "CT head showing no acute injury, no hemorrhagic injury…CT head showing no acute process. MRI brain showing no intracranial abnormal findings."[17]

c. "IMPRESSION:…headaches."[18]

d. "I do not see in the reports of any medications that were attempted for the headaches or any sort of treatment so far."[19]

e. "I do not see any objective evidence of traumatic brain injury."[20]

f. "The patient likely suffered a concussion during the boating accident however feel this point this would likely to have been resolved. The reports of the seizures in the emergency room also have some other reported information in the records concerning alcohol consumption with a shot of whiskey after shooting a bobcat. Certainly many

---

[14] Claimant's Exhibit 1, pg. 1
[15] Claimant's Exhibit 3: Dr. Duplantier's report
[16] Id, pg. 3, "HX OF PRESENT ILLNESS"
[17] Id, pg. 4, "DIAGNOSTIC DATA"
[18] Id, pg. 4, "IMPRESSION"
[19] Id, pg. 5, "DISCUSSION"
[20] Id, pg. 5, "DISCUSSION"

electrolyte imbalances could cause seizure activity as well as other things such as lack of sleep and other substances such as alcohol consumption. Therefore is more likely than not that the seizure activity was also not related to the accident."[21]

g. "He likely did suffer a concussion however I do not see any objective evidence of a traumatic brain injury."[22]

h. "Again I do not see any objective findings to suggest a true traumatic brain injury. From the symptoms he discussed at the initial presentation to the emergency room it is possible that he had suffered a concussion. The reports of the seizures in the emergency room also have some other reported information in the records concerning alcohol consumption with a shot of whiskey after shooting a bobcat. Certainly many electrolyte imbalances could cause seizure activity as well as other things such as lack of sleep, dehydration and other substances such as alcohol consumption. Therefore it is more likely than not that the seizure activity was also not related to the accident."[23]

i. "The temporal relationship of the trauma to his head is there however the magnitude is likely not appropriate. Again if the patient suffered a concussion this would likely have been resolved."[24]

j. "We also discussed the other relevant risk factors for seizure activity such as electrolyte imbalances, lack of sleep, dehydration as well as alcohol consumption."[25]

---

[21] Id, pg. 5, "DISCUSSION"
[22] Id, pg. 5, "The 1st Step"
[23] Id, pg. 6, "The 2nd Step"
[24] Id, pg. 6, "The 3rd Step"
[25] Id, pg. 6, "The 4th Step"

k. "I also feel it is more likely than not that the patient is not suffering from a traumatic brain injury at this point, and the seizure activity was not related to the accident either."[26]

Dr. Duplantier is an orthopedic surgeon. He is not a neurologist. As a result he is not qualified based on knowledge, skill, experience, training, or education as required by Rule 702 to testify in any manner regarding Dustin Harris' head injury, including his concussion, and traumatic brain injury. His testimony regarding Dustin Harris' head injury, concussion, and traumatic brain injury is therefore not reliable, and should be excluded in that regard.

**WHEREFORE,** after due consideration had, claimant, Dustin Harris, respectfully requests the Court to grant his Motion In Limine, and exclude the testimony of Captain Ron Campana, and limit the testimony of Dr. Neil Duplantier, as set forth herein, and above.

Respectfully Submitted:

s/Ted Williams________________________

**Ted Williams (22690)**
212 Laurel Street
Baton Rouge, Louisiana 70801
Email: tedwilliamsattorney@gmail.com
Telephone: (225) 336-9600
Facsimile: (225) 709-1554
**Attorney for Dustin Harris**

[26] Id, pg. 7, "The 6th Step"

*and*

Respectfully Submitted:

s/John D. Ray________________________

**John D. Ray (26101)**
The Ray Firm, LLC
One American Place
301 Main Street, Suite 1950
Baton Rouge, Louisiana 70801
Email: john@rayfirm.net
Telephone: (225) 960-4449
Facsimile: (225) 960-4904
**Attorney for Dustin Harris**

**Certificate of Service**

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record via electronic filing.

This 14th Day of May, 2024.

_____/s/ Ted Williams___________________
Ted Williams