**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: THE MATTER OF                                    CIVIL ACTION
FMT INDUSTRIES, LLC ET AL.

No. 23-2388
c/w 23-2426
REF: ALL CASES

SECTION I

<u>**ORDER & REASONS**</u>

Before the Court are two motions[1] for partial summary judgment filed by

Ingram Barge Company, LLC ("Ingram") and a motion[2] for partial summary

judgment filed by FMT Industries, LLC, Florida Marine Transporters, LLC, Florida

Marine, LLC, and PBC Management, LLC (collectively, "Florida Marine" and with

Ingram "petitioners"). Claimant Dustin Harris ("Harris") filed an opposition[3] to

Ingram's motion for summary judgment with respect to his claims and filed an

opposition[4] to Florida Marine's motion for summary judgment with respect to his

claims. Ingram and Florida Marine filed replies.[5] Claimant Robert Flynt ("Flynt")

filed an opposition[6] to Ingram's motion for partial summary judgment with respect

to his claim for maintenance and cure. Ingram filed a reply.[7]

---

[1] R. Doc. Nos. 73, 76.
[2] R. Doc. No. 74.
[3] R. Doc. No. 82.
[4] R. Doc. No. 74.
[5] R. Doc. No. 92 (Ingram's reply); R. Doc. No. 94 (Florida Marine's reply).
[6] R. Doc. No. 85.
[7] R. Doc. No. 93.

Also before the Court is Harris's motion[8] *in limine* to exclude or limit the expert testimony of two individuals identified as expert witnesses for both petitioners. Ingram and Florida Marine both oppose Harris's motion to exclude.[9]

For the reasons that follow, the Court grants in part and denies in part Harris's motion to exclude, grants Ingram's motions for partial summary judgment, and grants Florida Marine's motion for partial summary judgment.

## I.     BACKGROUND

This matter arises out of a collision between the M/V CAROL MCMANUS, a vessel owned and operated by Ingram, and the M/V BIG D, a vessel owned by FMT Industries, L.L.C. and operated by Florida Marine, LLC. The collision occurred on January 9, 2023.

Harris was employed by PBC Management, LLC as a deckhand onboard the M/V BIG D at the time of the collision.[10] Harris's complaint alleges that he was seriously injured after suffering a fall caused by the collision.[11] Harris alleges that his injuries were caused by the negligence of Ingram and Florida Marine, as well as the unseaworthiness of the M/V BIG D.[12] In addition to seeking damages from Ingram and Florida Marine, Harris claims that he is entitled to maintenance and cure benefits from Florida Marine.[13]

---

[8] R. Doc. No. 70.
[9] R. Doc. No. 84 (Florida Marine's response); R. Doc. No. 83 (Ingram's response).
[10] R. Doc. No. 10, ¶ VI; R. Doc. No. 74-2, ¶ 1.
[11] R. Doc. No. 10, ¶ IX.
[12] *Id.* ¶ XI.
[13] *Id.* ¶ XVII.

At the time of the collision, Flynt was employed by Ingram as a cook on the M/V CAROL MCMANUS.[14] Flynt alleges that, during the collision, he was knocked from his bunk.[15] He alleges that he suffered injuries which were caused by the negligence of Ingram and Florida Marine.[16] Flynt also alleges the unseaworthiness of the M/V BIG D caused his injuries.[17]

Both Florida Marine and Ingram filed complaints for exoneration from and/or limitation of liability.[18] Harris and Flynt filed claims against both Florida Marine and Ingram.[19] Florida Marine and Ingram also filed claims against each other.[20] On November 7, 2023, the Court granted a motion to consolidate the limitation actions.[21]

Ingram's first motion for partial summary judgment argues that Ingram is entitled to summary judgment on Flynt's claims for maintenance and cure and related damages pursuant to *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548–49 (5th Cir. 1968).[22] More specifically, Ingram argues that Flynt is not entitled to maintenance and cure because he intentionally concealed a medical history of back

---

[14] R. Doc. No. 85, at 3; R. Doc. No. 73-1, at 3.

[15] R. Doc. No. 10, ¶ VII.

[16] *Id.* ¶ VIII.

[17] *Id.*

[18] R. Doc. No. 1 (Florida Marine's complaint); E.D. La. Case No. 23-2426, R. Doc. No. 1 (Ingram's complaint).

[19] R. Doc. No. 5 (Flynt's complaint against Florida Marine); R. Doc. No. 10 (Harris's complaint against Florida Marine); E.D. La. Case No. 23-2426, R. Doc. No. 8 (Flynt's complaint against Ingram); E.D. La. Case No. 23-2426, R. Doc. No. 13 (Harris's complaint against Ingram).

[20] R. Doc. No. 47 (Ingram's complaint against Florida Marine); E.D. La. Case No. 23-2426, R. Doc. No. 15 (Florida Marine's complaint against Ingram).

[21] R. Doc. No. 14.

[22] R. Doc. No. 73-1, at 1.

pain when completing his pre-employment medical questionnaires.[23] Ingram argues that Flynt's concealment was material to its decision to hire him and the prior injuries are causally connected to the alleged present injuries.[24] Accordingly, Ingram argues that it is entitled to the *McCorpen* defense and that Flynt's claims should be dismissed.[25]

In response, Flynt argues that the only prior evidence of Flynt having lower back issues was a single August 2020 record showing that Flynt called in to obtain a prescription for cyclobenzaprine due to feeling "spasms" after planting trees.[26] Flynt asserts that there is no evidence that a January 2021 lumbar X-ray, which was performed during a pre-employment physical, or its results were ever provided to him.[27] Additionally, Flynt highlights that Ingram performed a rigorous physical examination of Flynt prior to hiring him and it was satisfied that he was capable of performing his duties as a cook.[28]

Ingram's second motion for partial summary judgment argues that Ingram is entitled to partial summary judgment with respect to Harris's claims.[29] Ingram argues that "Harris specifically claims that he was in the deck locker of the BIG D when the collision occurred, and that the resulting movement of the BIG D caused him to hit his head on a pipe and fall down a set of stairs into the lower hold of the

---

[23] *Id.* at 8–11.
[24] *Id.* at 11–13.
[25] *Id.* at 14.
[26] R. Doc. No. 85, at 10.
[27] *Id.*
[28] *Id.*
[29] *See generally* R. Doc. No. 76-1.

vessel."[30] Ingram claims that "irrefutable video evidence" shows that Harris's allegations are untrue because he was in the galley during the collision, he did not hit his head on a pipe, and he did not fall down any stairs.[31] Based on this video evidence, Ingram argues that Harris's claims should be dismissed.[32]

Florida Marine also argues that it is entitled to summary judgment with respect to Harris's claims.[33] Florida Marine relies on the same video evidence from the M/V BIG D to argue that Harris's claims are fabricated and should be dismissed as baseless.[34]

In response to both motions, Harris argues that he was injured when the captain of the M/V BIG D attempted to avoid the collision.[35] As a novice deckhand, Harris argues that he cannot be faulted for mistaking the evasive maneuver for the collision.[36] Harris also asserts that the Court should not consider Florida Marine's transcript of Harris's recorded statements because Florida Marine has refused to produce the recording, making the transcript inadmissible.[37] Additionally, Harris argues that the Court should not consider the report from the petitioners' maritime safety expert Captain Ronald Campana ("Captain Campana") for the reasons set forth in Harris's motion to exclude Captain Campana's testimony.[38] Finally, Harris

---

[30] *Id.* at 1.
[31] *Id.*
[32] *Id.* at 17.
[33] R. Doc. No. 74, at 1.
[34] R. Doc. No. 74-1, at 18–19.
[35] R. Doc. No. 81, at 20; R. Doc. No. 82, at 19.
[36] R. Doc. No. 81, at 19; R. Doc. No. 82, at 18.
[37] R. Doc. No. 81, at 16.
[38] *Id.* at 17; R. Doc. No. 82, at 16; *see also* R. Doc. No.70 (Harris's motion to exclude).

argues that, because he has stated a claim against Florida Marine, he is entitled to maintenance and cure from Florida Marine.[39]

In Harris's motion *in limine*, Harris argues that Captain Campana's testimony should be excluded because Captain Campana's commentary is not necessary to understand the video evidence, he offers opinions outside his area of expertise, and he invades the province of the jury.[40] Harris also argues that the testimony of orthopedic surgeon Dr. Neil Duplantier ("Dr. Duplantier") should be excluded because Dr. Duplantier seeks to testify about Harris's "head injury, concussion, and traumatic brain injury," which Harris argues that, as an orthopedic surgeon, he is not qualified to do so.[41]

## II. STANDARD OF LAW

### a. *Daubert* Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

---

[39] R. Doc. No. 81, at 22. Harris also asserts that Florida Marine provided incomplete video evidence because the video includes only 1 minute and 24 seconds of the footage. *Id.* at 9. Harris notes that other video evidence produced will provide the Court with a better understanding of the incident. The Court has reviewed the video evidence submitted by Harris and both petitioners.

[40] *See generally* R. Doc. No. 70-1.

[41] *Id.* at 8–11.

(d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quotations omitted).

The U.S. Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). The *Daubert* framework requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent

with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As a general rule, "[q]uestions relating to the bases and sources of an expert's opinions affecting the weight to be assigned that opinion rather than its admissibility should be left for the jury's consideration." *Smith v. Starr Indem. & Liab. Co.*, 807 F. App'x 299, 302 (5th Cir. 2020) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 579, 596 (1993).

With respect to determining the relevance of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). When ruling on the admissibility of expert opinion evidence, "[t]he district court should, initially, approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo*, 826 F.2d at 422.

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir.1998)). "The admissibility of expert testimony is governed by the same rules, whether at trial or

on summary judgment." *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136–37 (5th Cir. 1996).

In bench trials, [s]trict evidentiary rules of admissibility are generally relaxed." *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278, 287 (5th Cir. 1987). "Additionally, 'the trial court's gate-keeper function role is significantly diminished in bench trials. . .because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence.'" *McCuller v. Nautical Ventures, LLC*, No. CV 05-1195, 2012 WL 12986715, at *4 (E.D. La. June 6, 2012) (Fallon, J.) (quoting *Marin v. Falgout Offshore, LLC*, No. CIV.A. 11-428, 2011 WL 6000848, at *3 (E.D. La. Nov 30, 2011) (Fallon, J.)).

### b. Summary Judgment Standard

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why

conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the movant's story is "blatantly contradicted by the record"—including a videotape—such that "no reasonable jury could believe it," the court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). If the nonmovant fails to meet its burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's]

favor." *Id.* at 255. "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *JW Dev., LLC v. Indep. Specialty Ins. Co.*, No. CV 22-390, 2022 WL 3139133, at *1 (E.D. La. Aug. 5, 2022) (Africk, J.) (quoting *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017)).

## III.   ANALYSIS

### a. Expert Opinions

Because Ingram's and Florida Marine's motions for summary judgment rely in part on Captain Campana's testimony, the Court will first address Harris's motion *in limine* which argues Captain Campana's and Dr. Duplantier's testimony should be excluded. As mentioned, "[t]he admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136–37 (5th Cir. 1996).

### i.   Captain Campana

Harris's first argument with respect to Captain Campana's report is that it primarily offers "director's commentary" of the video footage from the M/V BIG D. Harris argues that this video footage is self-explanatory and does not need an expert explanation.[42] However, as noted by the petitioners,[43] Federal Rule of Civil Procedure

---

[42] R. Doc. No. 70-1, at 6.
[43] R. Doc. No. 83 (Ingram's response), at 6; R. Doc. No. 84 (Florida Marine's response adopting Ingram's arguments with respect to the admissibility of Captain Campana's testimony), at 3.

26(a)(2)(B) requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "a complete statement of all opinions the witness will express and the basis and reasons for them." Accordingly, Rule 26 required Captain Camapana to explain the basis for his opinion, which he did in part through explaining what he observed in the video.

Harris next objects to Captain Campana's testimony because Captain Campana is not an expert in accident reconstruction or biomechanics yet his report includes testimony about whether the movement of the vessel would cause someone to stumble or lose their balance.[44] In response, petitioners argue that Captain Campana is qualified to testify based on his substantial experience in navigating vessels, his expertise in accident reconstruction, and his experience with vessel movements.[45] Additionally, petitioners argue that *Badeaux v. Eymard Bros. Towing Co., Inc.*, which Harris relies on, is not applicable because it addressed an opinion concerning the physics of a fall, which they argue is not at issue here.[46] No. CV 19-13427, 2021 WL 4860300, at *5 (E.D. La. Oct. 19, 2021).

As noted by the petitioners, Captain Campana appears to have extensive expertise sailing vessels as well as investigating vessel accidents.[47] Harris provides no support for the suggestion that this expertise is not sufficient to testify about the way a vessel would move and how this might affect someone on the vessel. Harris's

---

[44] R. Doc. No. 70-1, at 6.
[45] R. Doc. No. 83, at 7–9.
[46] *Id.* at 10.
[47] R. Doc. No. 83, at 7; *see also* R. Doc. No 70-3 (Captain Campana's curriculum vitae), at 2.

motion also does not address Captain Campana's experience with accident reconstruction and investigating vessel accidents.

With respect to the case Harris relies on, the *Badeaux* court explained that Captain Campana was not qualified to conduct a biomechanical analysis regarding the physics of the plaintiff's fall (whether it was possible for plaintiff to land in the position seen in photographs if he fell in the manner alleged). 2021 WL 4860300, at *5. To the extent Captain Campana attempts to testify regarding the physics of Harris's fall, Harris may object at trial. However, with respect to the statements in his report about the acceleration and deceleration of the vessel and how such movement might affect individuals on a vessel, nothing in Harris's objection indicates that such testimony should be excluded.

Harris argues that whether he fell or injured himself is an issue for the trier of fact to decide.[48] However, Harris does not point to any statements suggesting that Captain Campana would testify that Harris did not fall. Rather, the statements Harris is referencing discuss whether the movement of the vessel would cause a fall, not whether the fall occurred.[49] Accordingly, the Court finds no basis for sustaining Harris's objection on this basis at this time.

---

[48] R. Doc. No. 70-1, at 7.

[49] *Id.* at 6. The statements that Harris references are: "there was no rapid deacceleration or sudden motion that would cause anyone to lose their balance[;]" "the motion of the vessel slowing down would not cause someone to lose their balance or stumble[;]" and "the video footage during this time confirms the motion of the vessel slowing down did not cause any sudden movement that would affect anyone's ability to stand up."

Harris also contends that Captain Campana's opinion stating that Harris's testimony is "not corroborated by the galley video" is not helpful and invades the province of the factfinder. The Court agrees. "[A]n expert cannot make 'legal conclusions reserved for the court,' credit or discredit witness testimony, or 'otherwise make factual determinations reserved for the trier of fact.'" *Meaux v. Cooper Consol.*, LLC, No. CV 19-10628, 2021 WL 3553537, at *2 (E.D. La. Apr. 22, 2021) (Ashe, J.). "An expert 'opinion' stating that [the] plaintiff's testimony is inconsistent with other parts of the record is both unhelpful to the factfinder [ ] and also risks impermissibly invading the factfinding province of the Court." *Badeaux*, 2021 WL 4860300, at *5 (citing Fed. R. Evid. 702(a) and *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999)). Accordingly, the Court will exclude Captain Campana's opinion that Harris's testimony is not corroborated by the video.

Harris's final objection to Captain Campana's testimony is that Captain Campana's opinion that the work performed after the accident to secure loose barges is "a very strenuous task requiring strength and endurance" does not reflect any expertise and is not helpful to the trier fact.[50] In response, petitioners argue that, because it is not within common knowledge to know "how strenuous the work hauling rigging and reconnecting broken loose barges is," Captain Campana's testimony will be helpful to the trier of fact.[51] The Court agrees with the petitioners that Captain

---

[50] *Id.* at 7.
[51] R. Doc. No. 83, at 10.

Campana's testimony is relevant and helpful as it speaks to less obvious matters concerning the work performed onboard a vessel.

### ii.    *Dr. Duplantier*

Harris also seeks to exclude Dr. Duplantier's testimony regarding Harris's head injury because Dr. Duplantier is an orthopedist and not a neurologist. In response, Florida Marine explains that it "does not intend to introduce Dr. Duplantier as an expert in the specialty of neurology, and "[t]o the extent his testimony touches upon neurological issues, such testimony can be categorized as an observation made by a qualified orthopedist in his treatment of Mr. Harris as a whole."[52] Florida Marine states that "Dr. Duplantier's evaluation of Mr. Harris was predominantly for lower back pain" but he "also evaluated the CT scan of Mr. Harris'[s] head and an MRI of Mr. Harris'[s] brain as part of his review of the pertinent medical documentation."[53]

"The Fifth Circuit has held [ ] that a physician's knowledge, training, and education in the fields of medicine will generally be sufficient predicate to allow the physician to testify as to fields outside his area of specialty." *McCuller*, 2012 WL 12986715, at *3. Accordingly, considering the more relaxed evidentiary standards because this matter is set for a bench trial, Harris's ability to cross-examine Dr.

---

[52] R. Doc. No. 84, at 2. Ingram notes that it "does not object to the [m]otion in [l]imine to the extent it seeks to preclude Dr. Duplantier, who performed an IME on Harris, from testifying as to his opinions regarding Harris'[s] alleged head injury." R. Doc. No. 83, at 1. "Ingram however intends to offer Dr. Duplantier's testimony regarding all issues in his [r]eport other than the head injury." *Id.* at 2.
[53] *Id.* at 1–2.

Duplantier as to his neurological expertise, and Harris's ability to present contrary evidence, the Court will not exclude his opinion at this time.

### b. Flynt's Claims

As discussed, Ingram argues that it is entitled to summary judgment on Flynt's claims for maintenance and cure pursuant to *McCorpen*, 396 F.2d at 548–49. The duty of maintenance and cure "obligates [maritime employers] to pay for the lost wages, medical care, food, lodging, and other incidental expenses of a mariner who falls ill or is injured while in the service of the vessel." *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 726 (E.D. La. 2009) (Vance, J.). "The duty is practically absolute." *Id.* "Unlike an employer's duties under the Jones Act, for example, liability for maintenance and cure is 'in no sense . . . predicated on the fault or negligence of the shipowner.'" *Id.* (quoting *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943)).

Pursuant to *McCorpen*, "[w]here the shipowner requires the seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." 396 F.2d at 548. "To establish the *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to the employer's decision to hire the seaman; and (3) a causal link exists between the withheld information and the injury that is the subject of the

complaint." *Marroquin v. Crosby Dredging, LLC*, No. CV 23-1836, 2024 WL 863888, at *2 (E.D. La. Feb. 29, 2024) (Barbier, J.) (citing *McCorpen*, 396 F.2d at 548–49).

With respect to the first element, Ingram argues that Flynt responded "no" to questions regarding whether he had ever been treated for back pain or back injuries on multiple pre-employment questions when he did in fact have a history of back pain that he should have disclosed.[54] In support of its argument that Flynt had a medical history that he should have disclosed, Ingram cites to multiple medical records and a statement made by Flynt. The medical history, as argued by Ingram, is as follows:

> "On August 25, 2020, for example, Flynt called Bethesda Free Clinic complaining of 'spasms in lower back after planting trees in his yard.'"[55] "At this time, Flynt requested a refill of cyclobenzaprine 10mg and stated that he saw a Dr. Krueger in November 2019 for the same issue."[56] "Flynt returned to the Bethesda Free Health Clinic in October 2020 still complaining of back discomfort, among other ailments [and] [ ] was diagnosed with low back pain and again prescribed cyclobenzaprine."[57] "Similarly, Flynt was also a patient at EXCELth, Inc. in 2014 and 2015, and the EXCELth records show Flynt reported a history of backaches."[58]

Additionally, according to Ingram, Flynt had "a lumbar spine x-ray taken on January 19, 2021, 11 months *before* Flynt completed Ingram's pre-employment questionnaires," and the radiologist stated that Flynt's lumbar spine "demonstrated severe L5-S1 degenerative disc disease with grade 1/2 anterolisthesis of L5 on S1

---

[54] R. Doc. No. 73-1, at 5.
[55] *Id.*
[56] *Id.*
[57] *Id.* at 6.
[58] *Id.*

17

which may be degenerative or related to spondylosis."[59] Ingram also argues that Flynt admitted to having lower back pain before the incident.[60]

In response, Flynt argues that the only record related to Flynt's low back pain, which is what he allegedly injured during the collision between the M/V CAROL MCMANUS and the M/V BIG D,[61] is the August 25, 2020 medical record.[62] Flynt explains that the November 2019 visit to Dr. Krueger referenced in the August 25, 2020 medical record was regarding cervical neck pain, not low back pain.[63] Flynt highlights that neither of these records show that any physical examination or diagnostic testing was conducted.[64]

With respect to the records from EXCELth, Inc., Flynt states that these records include computer generated printouts listing numerous items "including 'history of BACKACHE' as 'Active' with a date of 11/11/2015 and another similar listing with the same date."[65] However, Flynt argues that none of the records show that Flynt had any complaints of low back issues and the only reference to an actual examination of Flynt's back says "Back: normal inspection, full range of motion, painless range of motion."[66] Finally, Flynt argues that, with respect to the lumbar X-ray conducted in January 2021, there is no evidence whatsoever that Flynt was aware of the results of

---

[59] *Id.* at 7 (emphasis in original).
[60] *Id.*
[61] R. Doc. No. 85, at 3.
[62] R. Doc. No. 85, at 6.
[63] *Id.*
[64] *Id.* at 7.
[65] *Id.*
[66] *Id.*

this X-ray as it was part of a pre-employment physical exam and not associated with any complaints of back pain.[67]

"The intentional concealment prong of the *McCorpen* defense does not require subjective intent to conceal." *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015). "The employer need only show that the seaman '[f]ail[ed] to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information.'" *Id.* (quoting *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005)). Accordingly, when Flynt answered "no" to the question regarding whether he had ever been treated for back pain, he intentionally concealed medical information because he had been treated for back pain.

The second *McCorpen* element considers whether "the nondisclosed facts were material to the employer's decision to hire the seaman." *Marroquin*, No. CV 23-1836, 2024 WL 863888, at *2. "The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. A seaman's "history of back injuries is the exact type of information sought by employers." *Id.*

Ingram has provided a statement from its Director of Human Resources, Kelly Clapp,[68] stating that, if Ingram had known about Flynt's history of back pain, "Ingram would have required additional medical information, including medical

---

[67] *Id.*

[68] The affidavit states that Kelly Clapp is responsible for making Ingram's hiring decisions. R. Doc. No. 73-5.

records, and further evaluation of his ability to perform the duties of the job before making a decision whether to hire him."[69] Kelly Clapp further explains that, because Flynt's medical history of back pain was material to his ability to safely perform his job duties, it "would have materially impacted Ingram's decision to hire him."[70] Additionally, Flynt "has not come forward with any evidence to show that he would have been hired even if he had fully disclosed his [back pain]." *Ladnier v. REC Marine Logistics, L.L.C.*, No. CIV.A. 14-1278, 2015 WL 3824382, at *5 (E.D. La. June 19, 2015) (Morgan, J.).

Accordingly, because Ingram has demonstrated that its knowledge of Flynt's history of back pain would have affected his hiring, it is clear to the Court that Flynt's failure to disclose was material.[71]

---

[69] *Id.* at 2.

[70] *Id.*

[71] *See Marroquin*, No. CV 23-1836, 2024 WL 863888, at *3 ("Plaintiff argues that a genuine issue of material of fact remains as to the materiality element because Defendants did not provide any type of declaration or affidavit stating that [the claimant's] previous injury would have affected their hiring decision. However, . . . [t]he mere fact that [the employer] asked about [the claimant's] history with back and neck pain indicates that this information would have been material to their hiring decision."); *Daggs v. Gulf Offshore Logistics, LLC*, No. CV 19-00071, 2019 WL 5693058 (E.D. La. Nov. 4, 2019) (Ashe, J.) (explaining that is irrelevant to the materiality analysis that the claimant passed the employer's physical examination and worked for a period without incident); *All. Marine Servs., LP v. Youman*, No. CV 17-8124, 2018 WL 6523134, at *8 (E.D. La. Dec. 12, 2018) ("[T]here is no genuine dispute that the medical questionnaire was specifically designed to elicit information concerning past back injuries, that such inquiries were rationally related to the job applicant's physical ability to perform job duties, and that [the claimant] concealed his prior lower back injuries; accordingly, the concealed prior back injuries were material to [the employer's] decision to hire [the claimant]."); *Soileau v. Baywater Drilling*, LLC, No. 6:17-CV-00710, 2018 WL 3637934 (W.D. La. July 31, 2018) (stating that "[t]he type, duration or severity of the prior back problems is not the issue" where an employer asks specific medical questions related to the applicant's ability to

The final *McCorpen* element requires the Court to consider the causal link between the withheld information and the information that is the subject of the inquiry. "A party seeking to employ a *McCorpen* defense is not required to show that the plaintiff's preexisting injuries were the sole cause of the present injury claimed." *Marroquin*, No. CV 23-1836, 2024 WL 863888, at *3. Instead, "[a]ll that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. "To establish this connection, it is sufficient to show that the previous injury and the new injury occurred in the same location on the body." *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014) (Morgan, J.).

Courts in this district have "held that when both a plaintiff's prior injuries and present injuries concern the lower back, the causal link has been met and summary judgment on the issue of the *McCorpen* defense is appropriate." *Marroquin*, No. CV 23-1836, 2024 WL 863888, at *3 (citing *Flowers v. Magnolia Marine Transp. Co.*, No. CV 22-1209, 2023 WL 5831714, at *4 (E.D. La. Sept. 8, 2023) (Barbier, J.) and *Foret v. St. June, LLC*, No. CIV.A. 13-5111, 2014 WL 4539090, at *5 (E.D. La. Sept. 11, 2014) (Barbier, J.)). Plaintiff failed to disclose that he sought treatment for lower back pain and now complains of an injury to his lower back.[72] Accordingly, Ingram is

perform his duties); *see also Savoie v. Inland Dredging Co. LLC*, No. CV 20-2294, 2022 WL 1540585, at *3 (E.D. La. May 16, 2022) (explaining that material issues of fact existed with respect to materiality when the employer's affidavit suggested that the claimant *may* have been referred for additional medical review).

[72] While plaintiff disputes whether some of the medical records related to lower back pain, he does admit that the August 25, 2020 medical report concerned Harris's complaint of lower back spasms. R. Doc. No. 85, at 8. Because it is undisputed that

entitled to the application of the *McCorpen* defense, and the Court will grant Ingram's motion for summary judgment with respect to Flynt's claims.

### c. Harris's Claims

As noted, Harris argues that the Court should not consider Captain Campana's report for the reasons set forth in the motion *in limine* to exclude his testimony.[73] The Court has already addressed Harris's objections with respect to Captain Campana. Therefore, with the exception of the opinion that the Court will exclude, the Court will consider Captain Campana's report for purposes of deciding the summary judgment motions.

Harris also argues that the Court should not consider the transcript of Harris's recorded statement, which was taken on the day of the accident, because Florida Marine has not produced the recording.[74] Harris relies on one case, *Rivera v. Robinson*, which addressed call recordings that a plaintiff sought to introduce at trial. 464 F. Supp. 3d 847, 854 (E.D. La. 2020) (Lemmon, J.). The defendants in that case objected to the transcript because it was incomplete since "certain items which were audible on the tape are noted as inaudible." *Id.* In resolving this objection, the court explained that either the parties must reach an agreement about the contents of the transcript or the transcript would be excluded and the audiotape admitted in its place. *Id.* Unlike in *Rivera*, Harris does not provide any indication that he disagrees

---

the August 25, 2020 medical record concerned lower back pain, the Court need not address the arguments that the other records did not concern lower back pain or that Harris did not know about the records.
[73] R. Doc. No. 81, at 16–17.
[74] *Id.*

with the contents of the transcript and the Court will therefore consider it and give it the appropriate weight.[75]

### i.   *Jones Act Claim*

"A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury." *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 205 (5th Cir. 2019) (quoting *Randle v. Crosby Tugs, L.L.C.*, 911 F.3d 280, 283 (5th Cir. 2018)). "The standard of causation in Jones Act cases is not demanding." *Id.* (quoting *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008)). "Indeed, a claim under the Jones Act requires only that employer negligence 'played any part, even the slightest, in producing the injury.'" *Id.* (quoting *Johnson*, 544 F.3d at 335).

As discussed, both petitioners argue that they are entitled to summary judgment with respect to Harris's Jones Act negligence claims because "irrefutable video evidence" from the M/V BIG D shows that Harris was in the galley at the time of the collision, not in the deck locker where he claims that he hit his head on a pipe and fell down a set of stairs. Petitioners argue that, because Harris's testimony is contradicted by the video evidence, Harris has not demonstrated that he has suffered an injury. In response, Harris argues that the accident happened in the deck locker as alleged, but that he was mistaken about the accident happening during the

---

[75] To the extent that Florida Marine is refusing to produce the audio recording to Harris, the proper remedy is to file a motion to compel.

collision and that it actually happened during the evasive maneuver before the collision.

In addressing Harris's counsel's suggestion that Harris was mistaken about the timing of his accident, Ingram argues that "[a]rgument of counsel is not evidence capable of defeating a motion for summary judgment."[76] Additionally, Ingram points out that "[i]n situations where the non-movant in a motion for summary judgment submits an affidavit which directly contradicts an earlier deposition and the movant has relied upon and based its motion on the prior deposition, courts may disregard the later affidavit." *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (Barbier, J.) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)). Florida Marine argues that the Fifth Circuit has held that when a plaintiff changes his recollection "to include comments on an issue that is central to an element of her claim," the Court should strike the affidavit.[77]

While this Court has discretion to strike the inconsistent affidavit, "courts have allowed a contradictory or inconsistent affidavit to nonetheless be admitted if it is accompanied by a reasonable explanation." *Id.*; *see also Free*, 815 F. App'x at 767 ("Notably, courts typically require some explanation for an inconsistency between a deposition and affidavit."). Harris's response explains that Harris was an inexperienced deckhand as he completed orientation with Florida Marine on November 23, 2022, the M/V BIG D was the only boat that Harris worked on, he never

---

[76] R. Doc. No. 76-2, at 15.
[77] R. Doc. No. 94, at 2 (citing *Free v. Wal-Mart La., L.L.C.*, 815 F. App'x 765, 766–67 (5th Cir. 2020)).

worked in the maritime industry before working for Florida Marine, and the January 9, 2023 accident occurred on his second hitch.[78] His response also explains that there are no windows in the deck locker and he did not hear the general alarm go off.[79] Accordingly, while the Court is mindful of its discretion to exclude Harris's inconsistent affidavit, Harris has offered a reasonable explanation for the affidavit's inconsistency with his earlier testimony regarding the timing of his accident.

Notwithstanding, Ingram highlights that, even if the Court accepts Harris's changed allegation that his accident occurred before the collision, there are less than twenty seconds between which the BIG D was put in reverse and the time at which Harris can be seen returning to the galley.[80] Harris agrees with this assertion and argues that approximately 19 seconds is "more than enough time" for Harris's accident to have occurred.[81] Harris also states that he heard a creaking sound just before his accident.[82]

As Ingram notes,[83] if Harris heard the creaking sound, which is recorded on the overwatch video beginning at 1:52.06,[84] before his accident as he testified, then there were only eight seconds between his fall (assuming his fall occurred immediately as the creaking sound began) and his entry into the galley at 1:52.14.[85]

---

[78] R. Doc. No. 82, at 5.
[79] *Id.* at 6.
[80] R. Doc. No. 76-1, at 15.
[81] R. Doc. No. 82, at 19.
[82] *Id.* at 9.
[83] R. Doc. No. 92, at 2.
[84] R. Doc. No. 81-5 (Ex. 4) (M/V BIG D overwatch video).
[85] R. Doc. No. 81-4 (Ex. 3) (M/V BIG D galley video).

During those eight seconds, he would have needed to lose his balance, strike his head, fall down a flight of stairs, get up, walk back up the stairs, and walk approximately 15 feet to the galley.[86] While Harris's response suggests that "he quickly ran up the stairs, out of the deck locker, and into the galley,"[87] Harris  previously testified in a deposition that he "tried to make his way up the stairs" and could only do so by "leaning on the wall."[88] He also testified that, after making it up the stairs, he "stumbled around to the galley."[89]

Ingram also argues that the reversing of the BIG D did not cause the boat to rock, tip, or otherwise cause Harris to fall.[90] In support of this argument, Ingram relies on deposition testimony from Captain Jackie Burns ("Captain Burns") stating that the slowing of the M/V BIG D did not cause the boat to tip, video from the galley showing that the slowing down did not cause objects in the galley to move, and video showing that Deckhand Isaiah Marquez, who was standing at the stove in the galley, was not jostled.[91]

Florida Marine makes many of the same arguments as Ingram, which the Court need not restate. Florida Marine also points to Captain Campana's written

---

[86] *Id.*; *see also* R. Doc. No. 82 (Harris's response explaining that Captain Burns testified that it is 15 to 20 feet from the deck locker to the galley), at 4.

[87] R. Doc. No. 82, at 6.

[88] R. Doc. No. 76-7, at 48.

[89] *Id.* The Court notes that Harris has offered no reasonable explanation for the inconsistency between his response that "he quickly ran up the stairs, out of the deck locker, and into the galley" and his deposition testimony that "tried to make his way up the stairs" and could only do so by "leaning on the wall." R. Doc. No. 82, at 6; R. Doc. No. 76-7, at 48. *See Hyde*, 107 F. Supp. 2d at 993.

[90] R. Doc. No. 76-1, at 15.

[91] *Id.* at 15–16.

report which explains that there was no rapid deceleration or sudden motion that would have caused anyone to lose their balance.[92] Additionally, Florida Marine argues that Harris's walking into the galley without any indicia of an accident or injury does not comport with an individual who has fallen down a set of stairs and struck his head.[93]

In response, Harris argues that the overwatch video confirms a loud creaking noise occurring when Captain Burns attempted to avoid the collision which confirms his testimony that he heard a creak, felt a vibration, and felt the boat tip when his accident occurred.[94] Harris also highlights that there is no video evidence from the M/V BIG D's deck locker where the accident occurred.[95] Harris also states that the port aft video shows Harris disembarking the for medical treatment after the collision and walking with a noticeable limp.[96] Additionally, Harris argues that his medical records demonstrate that the accident actually occurred. This is because his treating orthopedic spine surgeon's opinion is that the barge accident was the likely cause of his injuries and he had no history of medical treatment or injury to his low back or neck prior to the accident.[97]

The Court has reviewed all the video evidence and exhibits submitted by the parties. The Court is also mindful that "in bench-trial cases the district court has

---

[92] R. Doc. No. 74-1, at 7.
[93] *Id.* at 8.
[94] R. Doc. No. 82, at 18.
[95] *Id.* at 10.
[96] *Id.* at 9–10.
[97] *Id.* at 13.

greater discretion to grant summary judgment." *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The Court may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)).

Accordingly, the Court finds that the petitioners are entitled to summary judgment with respect to Harris's Jones Act claims. While the Court is mindful of the reasons that Harris might have been mistaken about the timing of the accident, the Court notes that Harris has changed his allegations based on the video evidence presented. Aside from seeking to recant his original testimony and providing evidence that he suffered an injury at some point, Harris has provided no evidence that his injuries occurred during or right before the collision. As Ingram and Florida Marine note,[98] the temporal connection of the injury to the accident alone is not sufficient to sustain a Jones Act claim. *See Johnson v. Horizon Offshore Contractors, Inc.*, No. CIV.A. 06-10689, 2008 WL 916256, at *5 (E.D. La. Mar. 31, 2008) (Engelhardt, J.) (explaining that a temporal relationship "is insufficient to show that there is more than a mere possibility that a causal relationship exists between [the employer's alleged negligence and [claimant's] injury").

The Court also recognizes the extremely short time period during which the evasive maneuver began and the moment at which Harris can be seen in the galley, presenting with no visible signs of an injury. Harris's suggestion that he was able to

---

[98] R. Doc. No. 92 (Ingram's reply), at 4; R. Doc. No. 94 (Florida Marine's reply), at 2.

run back up the stairs and into the galley is plainly contradicted by his previous deposition testimony. Furthermore, the video evidence during the evasive maneuver, the statements by Captain Burns, and Captain Campana's report contradict Harris's assertion that the vessel tipped or rocked in any manner that would cause someone to lose their balance.

*ii.    Unseaworthiness Claim*

Harris also alleges a claim for unseaworthiness against Florida Marine, as the owner and operator of the M/V BIG D.[99] "Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Gowdy*, at 205 (quoting *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012)). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001).

Harris "concedes that the [M/V] B[IG] D was not unseaworthy at the time of the January 9, 2023 accident because Captain Burns'[s] negligence in causing the accident was isolated."[100] Because unseaworthiness cannot be based on an "isolated, personal negligent act," the petitioners' motions for summary judgment will be granted with respect to the unseaworthiness claim. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500 (1971).

---

[99] R. Doc. No. 10, ¶ XII.
[100] R. Doc. No. 81, at 24.

### iii. *Maintenance and Cure Claim*

The Court previously described the duty of maritime employers to pay maintenance and cure. As mentioned, "liability for maintenance and cure is 'in no sense . . . predicated on the fault or negligence of the shipowner.'" *Johnson*, 599 F. Supp. 2d at 726 (quoting *Aguilar*, 318 U.S. at 730).

In addition to his claims for negligence and unseaworthiness, Harris has also asserted claims for maintenance and cure against Florida Marine.[101] Harris's response to Florida Marine's motion for summary judgment correctly notes that Florida Marine did not address Harris's claim for maintenance and cure. Florida Marine agrees that maintenance and cure was not raised in its motion.[102] Accordingly, the Court will not address this claim.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Harris's motion *in limine* to exclude the expert opinions of Captain Campana and Dr. Duplantier is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to exclude Captain Campana's opinion that Harris's testimony is not corroborated by the video and **DENIED** in all other respects.

---

[101] R. Doc. No. 10, ¶ XVII.
[102] R. Doc. No. 94, at 3.

**IT IS FURTHER ORDERED** that Ingram's motion for summary judgment with respect to Flynt's claim for maintenance and cure is **GRANTED**. Flynt's claim for maintenance and cure is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Ingram's and Florida Marine's motions for partial summary judgment with respect to Harris's claims are **GRANTED**. Harris's Jones Act negligence claims against Ingram and Florida Marine are **DISMISSED WITH PREJUDICE**. Harris's claim for unseaworthiness against Florida Marine is also **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, May 30, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**